SAMUEL W. HEARN *vs.* THE WILMINGTON CITY RAILWAY COMP-
ANY, a corporation of the State of Delaware.

ROBERT D. MORROW, trading as James Morrow and Son, *vs.*
THE WILMINGTON CITY RAILWAY COMPANY, a corporation
of the State of Delaware.

*Actions for Negligence—Expert Testimony—Application for View
by Jury—Accident at Railway Crossing—Question of Negli-
gence—Negligence never Presumed—Burden of Proof—
Proximate Cause— Mutual Negligence— Care to
Avoid Collision—Degree of Care Required—
View to Crossing Obstructed—Jury Judges
of Evidence—Conflict of Testimony—
Measure of Damages.*

1.   Expert testimony as to the effect of a fog on lights in a trolly car
is not admissible, it being a matter of which men of ordinary experience
and intelligence are competent to judge.

2.   Evidence that the car was late at the time of the  accident, in
order that the jury might draw an inference as to the speed of the car,
*held* inadmissible.

3.   Application to have jury view the scene of the alleged accident
should be made to the Court in presence of counsel in the case, but  not
before the jury.

4.   The fact of an accident, does not, in itself, if not within the con-
trol of the defendant, establish the fact that injuries complained of were
caused by negligence.

5.   There can be no recovery for an unavoidable accident, or an acci-
dent not occasioned by negligence.

6.   Whether negligence exists in a particular case, and whose, when
submitted to the jury, is a  question of fact to be determined by the jury
from  the evidence.

7.   Negligence is never presumed.   It must be proved; and the bur-
den of proving it, rests upon the party alleging it.

8.   There is no presumption of negligence, either on the part of the
driver of a team, or on the part of a street railway company from the mere
fact of a collision between the team and a car of the company.

9.    Negligence of a motorman in charge of a car, or of the driver of a team, would be the negligence of his employer, respectively.

10.    Negligence is the want of such care as a reasonably prudent and careful man would exercise under similar circumstances.

11.    If the negligence of the driver of the team contributed to the alleged accident, and was the proximate cause thereof, neither he nor his employer can recover.

12.    If there was mutual negligence on the part of plaintiff and defendant, and the negligence of each was operative at the time of the accident, there can be no recovery; for the law will not attempt to measure the proportion of blame or negligence to be attributed to each.

13.    A railway company, having the right to use a public highway, and the traveler thereon are each required by law to use due and proper care in the exercise of their respective rights; and the right of each must be exercised with due regard for the right of the other.

14.    The person in charge of the car and the driver of the team are bound to the reasonable use of their sight and hearing for the prevention of accident, and to the exercise of such reasonable caution as an ordinarily careful and prudent person would exercise under like circumstances.

15.    When a railway crosses a public highway; and the view from the crossing is obstructed greater care is required by the person in charge of a car than where the view in approaching the crossing is unobstructed.

16.    A person approaching a railway crossing with which he is familiar is bound to avail himself of his knowledge of the locality and act with due care accordingly,

17.    If the approach to the crossing be obstructed, whereby it is more difficult to see an approaching car, the driver of a vehicle should exercise more care than might be required where the approach is unobstructed.

18.    The jury are the exclusive judges of the testimony.

19.    Where the testimony is conflicting, the jury should reconcile it, if they can.    But if they cannot, they should give credit to the testimony of those witnesses who, under all the circumstances, appeared to them to be most entitled to credit, taking into consideration the opportunity and advantages of each for seeing, observing, and knowing the things of which they testified, as well as their apparent fairness, intelligence, and any other element which may fairly test the truthfulness and accuracy of each.

20.    The verdict in a civil action should be for that party in whose favor is the preponderance or greater weight of the testimony.

21.    The measure of damages, is such a sum as would reasonably compensate the plaintiff, the driver of the team, for his injuries, his loss

of time and wages, his pain and suffering in the past and for such as may come to him in the future, and his expenses for medical attendance and for nursing.

22.    The measure of damages is such a sum as would reasonably compensate the plaintiff, the owner of the team, for the loss of his horse and damages to his wagon.    *Garrett vs. Peoples Ry. Co.*, 6 *Penn.* 35.

(*March* 17–19, 1910.)

PENNEWILL, C. J., and BOYCE, J., sitting.

*Frank L. Speakman* and *David J. Reinhardt* for plaintiff.

*Walter H. Hayes* and *Andrew C. Gray* for defendant.

Superior Court, New Castle County, March Term, 1910.

Two ACTIONS ON THE CASE,—the first, being No. 19, March Term, 1909, was brought to recover damages for personal injuries to the plaintiff therein, arising from a collision of a horse and wagon, driven by the plaintiff, with a car of the defendant, on December 8, 1908, at the intersection of Manor Avenue with the Philadelphia Pike, in Brandywine Hundred, New Castle County; and the second, being No. 78, September Term, 1909, was brought to recover damages for injuries to the said horse and wagon owned by the plaintiff therein, occasioned by the same collision. The two actions by consent of counsel, were tried together.

At the trial, W. was produced as a witness for plaintiff, and after testifying that he was a navigator of the Delaware River of fifteen years' experience; that he had heard the plaintiff Hearn's testimony as to the conditions surrounding the accident and had frequently observed the effect of fogs on lights at night, was asked the following question: "Will you state what effect, if any, in your opinion, a dark and foggy night would have upon the visibility of the lights in a trolley car at the time and place, and under the conditions as described by Mr. Hearn in his testimony in this case?"

*Gray*, of counsel for defendant objected to the above question, also to any expert testimony that might be brought out

from the said witness or others as inadmissible, because the effect of a fog upon lights is not such a matter as would require special study or knowledge, but is within the common knowledge of everybody; and is for the jury to decide from all the facts and circumstances of the case.

*Rogers on Expert Testimony, Sec. 8, p. 25.*

BOYCE, J.:—It occurs to us that probably there is not a man on the jury who has not observed lights through fogs, and that therefore expert testimony would not aid the jury in this case. Under the evidence adduced in this case a man of ordinary experience and intelligence is as competent to judge of the effect of fogs on lights as anyone who may have had many years' experience in observing lights through fogs at sea. We sustain the objection.

Counsel for plaintiff, after having proved by the plaintiff Hearn that the car that hit his team was running fast at the time of the collision, sought to prove by another witness that the car in question was late at the time of the accident, in order that the jury might draw an inference as to the speed of the car. This was objected to by counsel for defendant as irrelevant. Objection sustained.

After plaintiffs had concluded their testimony, *Mr. Hayes*, of counsel for defendant, asked that the jury be taken out to view the scene of the accident. After counsel for the respective parties had conferred with the Court, the Court announced that they declined to grant the application; and suggested that in future such application be made to the Court, in the presence of counsel in the case, but not before the jury.

Among the prayers of the defendant, was the following:

"Where the physical facts make it certain that a traveler on the highway could have seen the approaching car in time to have averted the injury, he is held to have seen what was obvious and if he then drove on the tracks in front of such car, he would be guilty of contributory negligence and cannot recover."

*2 Thomp. Neg., Sec.* 1445; *The Wil. City Ry. Co. vs. White,* 6 *Penn.* 367-368; *Trout vs. Ry. Co.,* 13 *Pa. Sup. Ct.* 17; *Burnett vs.*

*Detroit Ry. Co.*, 82 *N. W. Rep.* 518; *Fitzpatrick vs. Ry. Co.*, 194 *Mass.* 242; *Birch vs. Athol Ry. Co.*, 187 *Mass.* 243; *McCarthy vs. Ry. Co.*, 45 *Am. & Eng. Ry. Co.*, 685-690; *Price vs. Warner Co.*, 1 *Penn.* 271; *Adams vs. Ry. Co.*, 3 *Penn.* 517; *Farley vs. Ry. Co.*, 3 *Penn.* 585; *Snyder vs. Peoples Ry. Co.*, 4 *Penn.* 150; *Wilman vs. Peoples Ry. Co.*, 4 *Penn.* 262-263; *Boudwin vs. Ry. Co.*, 4 *Penn.* 385-386; *Dungan vs. Ry. Co.*, 4 *Penn.* 462-463.

BOYCE, J., charging the jury:

Gentlemen of the jury:—By consent of counsel, you have been empanelled to try two cases together, but to render a separate verdict in each case, in accordance with the law, as announced to you by the Court, and the evidence, adduced at the trial.

The first of these actions was brought by Samuel W. Hearn, the plaintiff therein, against the Wilmington City Railway Company, the defendant, to recover damages for personal injuries to the said plaintiff; and the second, was brought by Robert D. Morrow, trading as James Morrow and Son, the plaintiff therein, against the same defendant, to recover damages for the loss of a horse and injury to a wagon, belonging to the said plaintiff, it being alleged, in each case, that the injuries complained of were occasioned by the negligence of the defendant company.

The uncontroverted testimony is, that, on the evening of the sixteenth day of December, A. D. 1908, Hearn, the plaintiff in the first action, was driving a horse and delivery wagon, belonging to, and for Morrow, the plaintiff in the other action, along a public highway, known as Manor Avenue, near Claymont, this county, towards the Philadelphia Pike; that the railway tracks of the defendant company are laid on, or near, said pike and cross Manor Avenue, at or near its intersection with the said pike; that the injuries complained of were caused by a collision between a car of the defendant company and the said team at the said crossing. We decline to give you binding instructions to find for the defendant in either case, but submit the cases to you for

your consideration and determination under the evidence and our instructions.

The plaintiff, in each action, alleges that the car of the defendant company, as it approached said crossing, and at the time of the accident, was negligently and carelessly run at a dangerous rate of speed; without ringing gong or bell; with defective brakes; and by an incompetent motorman with knowledge of his incompetency.

Hearn, the plaintiff in the first action, claims that he drove the horse in a walk as he approached the crossing, and that he exercised due care and caution from the time he was within one hundred feet of the crossing until the horse was upon the track of the defendant company when the collision occurred.

The defendant company claims that it was not guilty of any negligence as its car approached the said crossing, or at the time of the accident; that due and timely warning of the approach of its car was given by ringing its bell; that the motorman was competent and that he exercised due and proper care in approaching the said crossing; that the accident was caused by the negligence of the driver of the team.

It is admitted that the defendant company was, and is now a corporation of this State; that it was operating the car in question on its tracks; that it had the lawful right to use its tracks and operate its car, at the time and place of the accident. It is also admitted that Manor Avenue and the Philadelphia Pike with which it connects are used for general travel.

The fact of an accident by which injuries are sustained, does not, in itself, if not within the control of the defendant, or its servants charged with causing the accident, establish the fact that such injuries were caused by negligence. There can be no recovery for an unavoidable accident or an accident not occasioned by negligence. These actions are based upon a charge of negligence on the part of the defendant company. If the damages for the recovery of which these suits were instituted were not the result of the negligence of the defendant company, the plaintiffs cannot recover. Whether negligence exists in a par-

ticular case, and whose, when submitted to a jury, is a question of fact to be determined by the jury from the evidence. Negligence is never presumed. It must be proved; and the burden of proving negligence to the satisfaction of the jury, by a preponderance of the evidence, rests upon the party alleging it. There is no presumption of negligence, either on the part of the driver of the said team, or on the part of the defendant company, from the mere fact that the injuries complained of resulted from the collision between the car and the team.

Negligence, if any, on the part of the motorman in charge of the car, in question, would be the negligence of the defendant company; and negligence, if any, on the part of the driver of the said team, would not only be his, but would be the negligence of his employer, the owner of the team.

Negligence has been variously defined by the courts in this State; but, after all, the different definitions mean substantially one and the same thing. It has been termed the want of ordinary care; that is, the want of such care as a reasonably prudent and careful man would exercise under similar circumstances. It has been termed the failure to observe, for the protection of the interests of another, that degree of care, prudence, and vigilance which the circumstances justly demand, whereby such other person suffers injury.

Applying these principles of the law as to what constitutes negligence, to the facts in these cases, you are to determine whether the plaintiff Hearn in driving the team and the defendant in the movement of its car, did each exercise due care and caution, such as a reasonably prudent man would have exercised under similar circumstances. And if either did not, who did not? You are to determine from the evidence whether the injuries complained of were caused by the negligence of the defendant company, and, if so, whether that negligence was the proximate cause of the accident. If the negligence of the driver of the team contributed to the accident, and was the proximate cause thereof, neither he nor his employer can recover. If there was mutual negligence, and the negligence of each was operative

at the time of the accident, neither action can be sustained, for the law will not attempt to measure the proportion of blame or negligence to be attributed to each party. But if the injuries to the person of Hearn and to the property of Morrow were occasioned by the negligence of the defendant company, or of its servants, and without the fault or negligence of Hearn, the driver of the team, the plaintiffs would be entitled to recoveries in these actions.

The defendant company had at the time of the accident the right to use its railway tracks across Manor Avenue for the movement of its car thereon, and Hearn, the driver of the team, for himself and for his employer, had the right to use said Avenue and to cross the tracks of the company at said crossing. The railway company and the traveler are required by law to use due and proper care in the exercise of their respective rights. The right of each must be exercised with due regard to the right of the other, and the right of each must be exercised in a reasonable and careful manner, so as not unreasonably to abridge or interfere with the right of the other, and so as to prevent collisions and accidents.

We will not attempt to specify the precise acts of precaution which are necessary to be done or omitted by one in the management of an electric car, or by one in the management of a wagon, approaching a railway crossing. Such acts must depend upon the circumstances of each case, and the degree of care required differs in different cases. The general rule is that the person in the management of the car and the person in the management of the wagon are bound to the reasonable use of their sight and hearing for the prevention of accident, and to the exercise of such reasonable caution as an ordinarily careful and prudent person, would exercise under like circumstances. What is due and proper care depends upon the facts of each case. When the railway crosses a public highway, and when the view of the railway from such crossing is obstructed, greater care is required of the person in charge of the car than where the view of the railway in approaching such crossing is unobstructed. A person approaching

a railway crossing with which he is familiar is bound to avail himself of his knowledge of the locality and act accordingly.   If the approach of the railway to the crossing be obstructed whereby it is more difficult to see an approaching car, the driver of a vehicle should exercise more care than might be necessary where the approach of the railway is unobstructed.   Both the company and the driver of the team in this case were required to use such reasonable care as the circumstances demanded, the one being required to exercise such care in order to avoid inflicting injury, and the other to avoid being injured.

As we have indicated, an increase of care is required and should be exercised by the person in charge of a car in approaching a crossing.   He should not approach such crossing at a dangerous rate of speed or without giving due and timely warning of his approach.   He should so regulate the speed of his car as to have it under control and be on the lookout for travelers upon the highway, that they, being in the exercise of due care may not be injured; and if his view or the view of the traveler upon the highway is obstructed in approaching the crossing, so as to prevent the one from seeing the other until perhaps dangerously near the crossing the care of the servant of the car should be increased in proportion to the requirements of such surroundings to prevent accident.   And when the servant of the company sees, or by the the exercise of reasonable care might see a traveler in danger, he should use every reasonable effort—it may be to slow up or stop, if need be to prevent accident—and if he fails in this duty the company would be guilty of negligence.

There is a corresponding duty on the part of the traveler to exercise like reasonable care in approaching a railway crossing to prevent accident, and especially so if there be obstructions so as to affect his view of an approaching car.   He should have his team under control and be on the lookout for an approaching car in time (if possible) to avoid a collision, and if he does not look, and for this reason does not see an approaching car until it is too late to avoid a collision, he is guilty of negligence.

If you find that Hearn, the driver of the team, as he ap-

proached the crossing, saw, or by looking could have seen .the approaching car in time to have prevented the collision, and failed to do so, he was guilty of negligence; and if such negligence entered into or contributed to the collision, it would defeat his right to recover in this action, and the right of recovery of his employer as well.

Like as the plaintiff, in actions of this character, must sustain his allegations of negligence by satisfactory proof before he can recover, so the defendant, when it relies upon contributory negligence on the part of the plaintiff, must satisfy the jury by a preponderance of evidence that contributory negligence on the part of the plaintiff was the proximate cause of the injury complained of. If you find under the evidence that the motorman in charge of the car in question did see, or by the exercise of due care in looking out ahead could have seen the driver in time to have stopped the car and thus have prevented the accident, then the defendant would be liable. But if you find that the driver of the team suddenly drove his horse upon the track or in front of the car and caused the collision, without any improper act or omission on the part of the motorman, and that the latter applied the brakes of his car and did all he could to prevent the injury, then Hearn, the plaintiff, in the first action, cannot recover, and his negligence in such event would bind the plaintiff Morrow in the second action.

You are the exclusive judges of the testimony, and where the testimony is conflicting you should reconcile it if you can; if you cannot, you should give credit to the testimony of those witnesses who, under all the circumstances, appeared to you to be most entitled to credit, taking into consideration the opportunity and advantages of each for seeing, observing and knowing the things of which they testify, as well as their apparent fairness, intelligence and any other element which may fairly test the truthfulness and accuracy of each. Your verdict should be for that party in whose favor is the preponderance or greater weight of the testimony.

Verdict.

If you should find for Samuel W. Hearn, the plaintiff in the first action, your verdict should be for such sum as would reasonably compensate him for his injuries, his loss of time and wages, his pain and suffering in the past and for such as may come to him in the future, and his expenses for medical attendance and for nursing.

If you should find for Robert D. Morrow, trading as James Morrow & Son, the plaintiff in the second action, your verdict should be for such a sum as would reasonably compensate him for the loss of his horse and the damages to his wagon.

*Garrett vs. Peoples Railway Co.*, 6 *Penn.* 35.

We have been requested to give you other and additional instructions, but we think these instructions cover the law applicable to the facts of this case, as administered by the the Courts of this State—and we now give the case over to you, without further instructions, to return herewith such verdicts as the preponderance of the evidence seems to you to warrant.

Verdict for plaintiff in each case, for $270.